IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MIGUEL ANTONIO AGUIRRE,

      Plaintiff,

v.                                                             No. CV 16-1319 MV/CG

NANCY A. BERRYHILL,
Acting Commissioner of Social Security
Administration,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Plaintiff Miguel Antonio Aguirre's *Motion to Reverse or Remand Administrative Agency Decision With Supporting Memorandum* (the "Motion"), (Doc. 20), filed July 31, 2017; and Defendant Commissioner Nancy A. Berryhill's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 24), filed September 13, 2017. No reply has been filed and the time for doing so has passed. United States District Judge Martha Vazquez referred this case to Magistrate Judge Carmen E. Garza to perform legal analysis and recommend an ultimate disposition. (Doc. 26).

Mr. Aguirre filed an application for supplemental security income on September 17, 2012, alleging disability beginning August 15, 2012. (Administrative Record "AR" 13). Mr. Aguirre claimed he was limited in his ability to work due to post traumatic stress disorder ("PTSD"), depression, and anxiety. (AR 227). Mr. Aguirre's application was denied initially on January 22, 2013, and upon reconsideration on May 1, 2013. (AR 13). Mr. Aguirre requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 22, 2015, before ALJ Barry O'Melinn. (AR 32). Mr. Aguirre and Leslie J.

White, an impartial vocational expert ("VE"), testified at the hearing, and Mr. Aguirre was represented by attorney Ione Gutierrez. (AR 35-57).

On June 22, 2015, the ALJ issued his decision, finding Mr. Aguirre not disabled at any time between his alleged disability onset date through the date of the decision. (AR 26). Mr. Aguirre requested review by the Appeals Council, (AR 8), which was denied, (AR 2-5), making the ALJ's decision the Commissioner's final decision for purposes of this appeal.

Mr. Aguirre, who is proceeding in this appeal *pro se*, now argues that the ALJ erred by: (1) failing to properly consider the opinions of his treating physicians and therapists; (2) failing to find that his PTSD and depression constitute severe impairments; (3) using the Medical Vocational Guidelines to deny benefits; (4) failing to consider the effect of Mr. Aguirre's inability to find and maintain employment; and (5) "not conducting an expert analysis of the mental disorders of PTSD and Major Depression and how they can affect Plaintiff's occupational base." (Doc. 1 at 1). The Court has reviewed the Motion, the Response, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because the Court finds that the Commissioner followed the correct legal standards and supported his decision with substantial evidence, the Court recommends that Mr. Aguirre's Motion be **DENIED**.

**I.     Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008); *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir.

1992). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or show . . . that she has done so, are grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting" it. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from

being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Because Mr. Aguirre proceeds *pro se*, the Court must construe his pleadings liberally and hold them to a less stringent standard than is required of a party represented by counsel. *Weinbaum v. City of Las Cruces*, 541 F.3d 1017, 1029 (10th Cir. 2008) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Liberal construction requires courts to make some allowance for a *pro se* litigant's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall*, 935 F.2d at 1110. However, "the Court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

## II. Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2015), 42 U.S.C. § 1382c(a)(3)(A) (2004); 20 C.F.R. § 416.905(a) (2012). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920 (2012).

At the first four steps of the SEP, the claimant bears the burden of showing: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically

4

determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. § 416.920(a)(4)(i-iv); *see Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation process. At step five the Commissioner must show the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III. Background

Mr. Aguirre applied for supplemental security income due to PTSD, depression, and anxiety. (AR 227). At step one, the ALJ determined that Mr. Aguirre had not engaged in substantial gainful activity since September 17, 2012, the alleged onset date. (AR 15). At step two, the ALJ concluded Mr. Aguirre has the following two severe impairments, an affective disorder and anxiety. *Id.* At step three, the ALJ determined that neither of Mr. Aguirre's impairments, solely or in combination, equaled one of the listed impairments in 20 C.F.R. §§ 416.920(d), 416.925 and 416.926. (AR 16-18).

At step four, the ALJ found that Mr. Aguirre has the RFC to perform a full range of work at all exertional levels. (AR 18). Regarding Mr. Aguirre's nonexertional limitations, the ALJ found that Mr. Aguirre can: understand, carry out, and remember simple, routine, one-to-two step instructions and make commensurate work related decisions; respond appropriately to supervision, coworkers, and work situations; deal with routine changes in the work setting; and maintain concentration, persistence, and

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

5

pace for up to and including two hours at a time with normal breaks throughout the workday. *Id.* The ALJ further found that Mr. Aguirre "is suitable for jobs involving work primarily with things and not people." (AR 19).

In formulating Mr. Aguirre's RFC, the ALJ stated that he considered Mr. Aguirre's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical and other evidence, as required by 20 C.F.R. § 416.929 and SSRs 96-4p and 96-7p. *Id.* The ALJ also stated that he considered opinion evidence in accordance with 20 C.F.R. § 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. *Id.* The ALJ engaged in a thorough discussion of Mr. Aguirre's testimony at the hearing and of the statements submitted as part of Mr. Aguirre's Social Security application. (AR 19-20). The ALJ found that Mr. Aguirre's daily activities are not limited to the extent one would expect given his complaints of disabling symptoms and limitations, "which weakens [Mr. Aguirre's] credibility." (AR 20). The ALJ also stated that inconsistencies in the record further weakened Mr. Aguirre's credibility. *Id.*

Turning to the medical evidence, the ALJ gave significant weight to the opinions of State Agency psychological consultants, Jerry Henderson, Ph.D., and Jon Etienne Mourot, Ph.D. (AR 21). The ALJ stated that their opinions are supported by objective medical evidence in the record, such as treatment notes, mental status examinations, and Mr. Aguirre's statements. (AR 21-22). The ALJ gave some weight to the opinions of State Agency consultative examiner, Davis Brimberg, Ph.D. (AR 22). The ALJ explained that Dr. Brimberg's opinions that Mr. Aguirre has good abilities to reason, understand, and remember information, and basic abilities to concentrate and persist at tasks, support a finding that Mr. Aguirre can perform unskilled work, and that these portions of

6

Dr. Brimberg's opinions are supported by treatment notes and mental status examinations. *Id.* However, the ALJ found that Dr. Brimberg's assignment of a Global Assessment of Functioning ("GAF") score of between 50 and 55 is inconsistent with Dr. Brimberg's finding that Mr. Aguirre can adapt well to social situations. *Id.*

Next, the ALJ gave little weight to the opinions of Certified Nurse Practitioner ("CNP") Asha Pollem, reasoning that Ms. Pollem is not an acceptable medical source and her opinions are inconsistent with subsequent treatment notes that indicate Mr. Aguirre was stable and doing well. *Id.* The ALJ further found that Mr. Aguirre is more limited socially than Ms. Pollem's opinions indicate. *Id.* The ALJ also gave little weight to the opinions of Licensed Professional Clinical Counselor ("LPCC") Peggy Harter, stating that she is not an acceptable medical source, and finding that her opinions are inconsistent with subsequent treatment notes. (AR 23). The ALJ considered a report by Mr. Aguirre's mother, stating that significant weight cannot be given to her report because she is not medically trained and is not a disinterested third party, and because her report is not consistent with the opinions and observations of the medical doctors in this case. *Id.* Finally, the ALJ stated that he gave some weight to Mr. Aguirre's GAF score of 55 because that score is consistent with the evidence in the record, but little weight to his GAF score of 40 because that score is inconsistent with the evidence and with Mr. Aguirre's reported activities of daily living. *Id.* The ALJ noted that the record also contains GAF scores ranging from 42 to 55, but that he gave these scores little weight because they were given prior to the period at issue. (AR 24).

The ALJ found that Mr. Aguirre has no past relevant work, so the ALJ proceeded to step five. (AR 24). At step five, the ALJ noted that Mr. Aguirre was 49 years old on

7

the alleged disability onset date, and therefore classified as "a younger individual" in accordance with the Regulations. *Id.* The ALJ determined that Mr. Aguirre has at least a high school education and is able to communicate in English. *Id.* The ALJ noted that the VE testified at the hearing that an individual with Mr. Aguirre's same age, education, work experience, and RFC could perform the jobs of hand packer, laundry checker, and cleaner. (AR 25). The VE stated that those jobs existed in significant numbers in the national economy. *Id.* After finding the VE's testimony consistent with the Dictionary of Occupational Titles, the ALJ adopted the VE's testimony and concluded that, because Mr. Aguirre is capable of performing work existing in significant numbers in the national economy, he is not disabled pursuant to 20 C.F.R. § 416.920(g). *Id.*

## IV. Analysis

Mr. Aguirre's Motion consists of one paragraph stating that the ALJ erred by: (1) failing to properly consider the opinions of Mr. Aguirre's treating physicians and therapists; (2) failing to find that Mr. Aguirre's PTSD and depression constitute severe impairments; (3) using the Medical Vocational Guidelines to deny benefits; (4) failing to consider the effect of Mr. Aguirre's inability to find and maintain employment; and (5) "not conducting an expert analysis of the mental disorders of PTSD and Major Depression and how they can affect Plaintiff's occupational base." (Doc. 1 at 1). In response, the Commissioner argues that the ALJ's step two findings encompassed all of Mr. Aguirre's mental impairments, the ALJ properly evaluated all of the medical source opinions, and the ALJ did not err in using the Medical Vocational Guidelines at step five. (Doc. 24 at 5-10). The Commissioner further argues that Mr. Aguirre's

remaining two claims should be denied because Mr. Aguirre fails to support these claims or explain how they affected the ALJ's decision. *Id.* at 10-11.

   A. *The ALJ's Step Two Findings*

Mr. Aguirre contends the ALJ erred by failing to find that his "condition of PTSD and Major Depression" constituted severe impairments. (Doc. 1 at 1). The Commissioner responds that the ALJ's finding of severe impairments encompasses Mr. Aguirre's PTSD and depression. (Doc. 24I at 5-6).

At step two, the ALJ considers a claimant's impairments to determine whether they are severe, which is defined as an impairment that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). At this step, the claimant's burden is *de minimus*, and "only those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits without undertaking the subsequent steps of the sequential evaluation process." *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (citations omitted). The claimant need only establish—and the ALJ need only find—one severe impairment to avoid a denial of benefits at step two. *See Oldham v. Astrue*, 509 F.3d 1254, 1256-67 (10th Cir. 2007). Therefore, "the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds at least one other impairment is severe." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016).

Here, the ALJ concluded at step two that Mr. Aguirre has two severe impairments: affective disorder and anxiety. (AR 15). As noted by the Commissioner, affective disorder encompasses the impairments of PTSD and depression. *See* (Doc. 24 at 5) (citing *Affective Disorders: Mood Disorders*,

https://www.isad.org.uk/aboutus/affective-disorders.asp). Moreover, because the ALJ found that Mr. Aguirre has at least one severe impairment, and proceeded in the sequential evaluation process, any error by the ALJ in not finding any additional severe impairments at step two is harmless. The Court, therefore, finds that the ALJ did not err at step two.

*B. The ALJ's Consideration of Treating Medical Source Opinions*

Next, Mr. Aguirre contends the ALJ committed legal error "by not giving weight to the opinions of all treating physicians and therapists and not giving an adequate explanation why." (Doc. 1). In response, the Commissioner states that it appears that Mr. Aguirre is referring to the opinions of Ms. Pollem and Ms. Harter as they are the only treating medical sources in the record. (Doc. 24 at 6). The Commissioner contends the ALJ properly considered Ms. Pollem's and Ms. Harter's opinions by giving sufficient reasons for the weight he gave them. *Id.* at 6-8.

*1. Ms. Pollem's Opinions*

Ms. Pollem completed a "Medical Source Statement: Mental Limitations" on October 17, 2013. (AR 406-10). Ms. Pollem stated that she had seven visits with Mr. Aguirre since August 2012, and she assigned him a GAF score of 50. (AR 406). She opined that Mr. Aguirre is able to understand, remember, and carry out short and simple instructions, remember work-like procedures, be aware of normal hazards, and take appropriate precautions. (AR 408). However, she opined that Mr. Aguirre is seriously limited or unable to meet the competitive standards in most of the other mental abilities and aptitudes necessary to do unskilled work. *Id.* Finally, Ms. Pollem found that Mr. Aguirre has a satisfactory ability to interact appropriately with the general public and

maintain socially appropriate behavior, and would miss about four days of work per month. (AR 409-10).

Consistent with Ms. Pollem's opinions, the ALJ determined that Mr. Aguirre could understand, carry out, and remember simple, routine, one-to-two step instructions, and make commensurate work-related decisions. (AR 18). However, the ALJ found Mr. Aguirre more limited in his social interactions than Ms. Pollem found, so the ALJ further limited Mr. Aguirre to jobs involving work primarily with things and not people. (AR 22). The ALJ explained that he gave little weight to portions of Ms. Pollem's opinions because she is not an acceptable medical source, and because her opinions are inconsistent with evidence in the record, such as subsequent treatment notes from 2014 and 2015 indicating Mr. Aguirre was stable and doing well. *Id.*

Social Security Regulations require ALJs to evaluate every medical opinion in the record. *See* 20 C.F.R. § 416.927(b)-(c); Social Security Ruling "SSR" 96-6p, 1996 WL 374180 (July 2, 1996). Every medical source opinion should be weighed by the ALJ in consideration of the following applicable "deference factors":

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citation omitted); *see also* 20 C.F.R. § 416.927(c)-(d). Ultimately, the ALJ must give good reasons that are "sufficiently specific to [be] clear to any subsequent reviewers" for the weight that she ultimately assigns the opinions. *Langley*, 373 F.3d at 1119 (citation omitted). Failure to

do so constitutes legal error. *See Kerwin v. Astrue*, 244 Fed. Appx. 880, 884 (10th Cir. 2007) (unpublished).

As a Certified Nurse Practitioner, Ms. Pollem is not an "acceptable medical source" pursuant to 20 C.F.R. § 416.913(a)(1)-(5), which provides that "[a]cceptable medical sources" include physicians, psychologists, certain optometrists and podiatrists, and certain speech-language pathologists. Instead, Ms. Pollem is an "other" medical source, pursuant to 20 C.F.R. § 416.913(d)(1). The distinction between acceptable medical sources and other medical sources "is necessary because '[i]nformation from . . . 'other [medical] sources' cannot establish the existence of a medically determinable impairment.' . . . Further, 'only acceptable medical sources can give . . . medical opinions' and 'be considered treating sources . . . whose medical opinions may be entitled to controlling weight.'" *Bowman v. Astrue,* 511 F.3d 1270, 1275 n.2 (10th Cir. 2008) (quoting SSR 06-03p, 2006 WL 2329939 at *2 (Aug. 9, 2006)). Nevertheless, the opinions of "other" medical sources must still be weighed using the factors set out in 20 C.F.R. § 416.927(d). *See Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *4.

The ALJ explained that he rejected portions of Ms. Pollem's opinions because they are inconsistent with medical evidence in the record, such as subsequent treatment notes from 2014 and 2015 indicating that Mr. Aguirre was stable and doing well. (AR 22). Specifically, the ALJ relied on treatment notes that showed the following: February 2014, Mr. Aguirre was able to focus and concentrate better, appeared to be stable, and was making a lot of progress with managing his anxiety and depression, (AR 439, 445); March 2014, Mr. Aguirre was psychiatrically stable overall, but had some

12

ongoing anxiety, (AR 428); April 2014, Mr. Aguirre appeared to be doing well overall, was in a good mood, and was easily engaged in conversation, (AR 427); July 2014, Mr. Aguirre was going to three different community center gyms and was feeling better in general, (AR 502); August 2014, Mr. Aguirre reported that everything was still going well, his anxiety had lessened, and he was making progress with his mental health, (AR 412); September 2014, Mr. Aguirre was doing well, getting out of his home, and running errands, (AR 536); December 2014 and January 2015, Mr. Aguirre's mood was improved, (AR 488-89). *See* (AR 21). The Court finds that the ALJ's reasoning is sufficiently specific and clear so that the Court is able to meaningfully review the ALJ's consideration of Ms. Pollem's opinions. Moreover, Mr. Aguirre cites to no medical evidence supporting the rejected portions of Ms. Pollem's opinions, and the opinions of State Agency consultants Dr. Brimberg, Dr. Henderson, and Dr. Mourot, all support the ALJ's RFC determination. *See* (AR 359, Dr. Brimberg's opinions that Mr. Aguirre has good abilities to reason, understand, and remember information, and adapt to work and social situations, and has basic abilities to concentrate and persist at tasks); (AR 72-73, 83-84, Dr. Henderson's and Dr. Mourot's opinions that Mr. Aguirre can do simple, repetitive 1-2 step tasks with limited public or interpersonal contacts, and thus can perform unskilled work). Accordingly, the Court finds the ALJ properly considered Ms. Pollem's opinions.

   *2. Ms. Harter's Opinions*

As a Licensed Professional Clinical Counselor, Ms. Harter is an "other" medical source, pursuant to 20 C.F.R. § 416.913(d)(1). On October 23, 2013, Ms. Harter completed a "Medical Source Statement: Mental Limitations." (AR 400-04). Ms. Harter

13

stated she met with Mr. Aguirre "weekly since 8/10/2012," and assigned him a GAF score of between 50 and 55. (AR 400). She opined that Mr. Aguirre is able to be aware of normal hazards and take appropriate precautions, and that he has limited but satisfactory abilities to maintain regular attendance, be punctual, and ask simple questions or request assistance. (AR 402). In all other mental abilities and aptitudes necessary to do unskilled work, Ms. Harter opined that Mr. Aguirre is seriously limited, unable to meet the competitive standards, or has no useful ability to function. *Id.* Finally, Ms. Harter found that Mr. Aguirre has a satisfactory ability to deal with the stress of semiskilled and skilled work, and would miss more than four days of work per month. (AR 403-04).

Similar to Ms. Pollem's opinions, the ALJ gave little weight to Ms. Harter's opinions because she is not an acceptable medical source, and because her opinions are inconsistent with evidence in the record, such as subsequent treatment notes from 2014 and 2015 indicating Mr. Aguirre was stable and doing well. (AR 23). For the same reasons stated above, the Court finds that the ALJ sufficiently explained the weight given to Ms. Harter's opinions and provided support for his decision. The ALJ did not err by relying on subsequent treatment notes from 2014 and 2015 which indicate that Mr. Aguirre was stable and doing well, and the ALJ's decision is further supported by the opinions of the State Agency consultants Dr. Brimberg, Dr. Henderson, and Dr. Mourot. *See* (AR 412, 427-28, 439, 445, 488-89, 502, 536, 2014 and 2015 treatment notes relied on by the ALJ), (AR 72-73, 83-84, 359, opinions of Dr. Brimberg, Dr. Henderson, and Dr. Mourot). The Court finds that these reasons are sufficiently specific and clear so that the Court is able to meaningfully review the ALJ's consideration of Ms. Harter's

14

opinions. Accordingly, the Court finds the ALJ properly considered Ms. Harter's opinions.

### C. The ALJ's Step Five Findings

Next, Mr. Aguirre contends the ALJ erred "in using the Medical Vocational Guidelines to deny Plaintiff benefits." (Doc. 20). In response, the Commissioner argues the ALJ properly used the Guidelines as a framework for his decision, and that the ALJ's step five decision was supported by substantial evidence. (Doc. 24 at 9-10).

At step five, an ALJ must first assess the claimant's present job qualifications by considering the claimant's physical ability, age, education and work experience, and then the ALJ must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. *Heckler v. Campbell*, 461 U.S. 458, 460-61 (1983). The Medical-Vocational Guidelines ("the Grids") were promulgated to improve uniformity and efficiency at the second stage of step five by identifying jobs requiring specific combinations of a claimant's physical ability, age, education, and work experience. *Id.* at 461-62. Importantly, the Grids may not be applied conclusively where nonexertional impairments are present. *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984). Instead, when a claimant has both exertional and nonexertional impairments, and the claimant is not disabled by reason of the exertional impairments alone, the ALJ may use the Grids as a framework for consideration of how much the claimant's work capability is further diminished by the nonexertional limitations. SSR 85-15, 1984 WL 56857, at *1.

Here, the ALJ stated that Mr. Aguirre's ability to perform work at all exertional levels has been compromised by nonexertional limitations. (AR 25). To determine the

extent to which Mr. Aguirre's limitations erode the occupational base, the ALJ asked the VE whether jobs exist in the national economy for an individual with Mr. Aguirre's age, education, work experience, and RFC, and the VE testified that such an individual would be able to perform the requirements of hand packer, laundry checker, and cleaner. *Id.* The ALJ concluded that, based on the testimony of the VE, Mr. Aguirre is capable of performing work that exists in significant numbers in the national economy, and that a finding of "not disabled" is therefore appropriate under the Grids. *Id.*

Based on the foregoing, the Court finds that, instead of conclusively relying on the Grids, the ALJ properly used Grid Rule 204.00 as a framework and elicited VE testimony to determine whether jobs exist in the national economy for someone with Mr. Aguirre's limitations. Therefore, the ALJ's findings at step five are not in error.

*D. Mr. Aguirre's Remaining Claims*

Finally, Mr. Aguirre contends that the ALJ erred "in failing to consider the effect of the Plaintiff's inability to find employment and maintain employment throughout the years caused by his mental conditions of PTSD and Major Depression," and "in not conducting an expert analysis of the mental disorders of PTSD and Major Depression and how they can affect Plaintiff's occupational base." (Doc. 1). The Commissioner contends that Mr. Aguirre fails to support these claims or explain how they affected the ALJ's decision. (Doc. 24 at 11).

As stated, the standard of review in a Social Security appeal is whether the ALJ's decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes*, 522 F.3d 1096. Here, the ALJ thoroughly discussed Mr. Aguirre's testimony at the hearing, the statements Mr. Aguirre submitted as part of his Social

Security application, Mr. Aguirre's mother's report, and the medical evidence in the record, including treatment notes and opinion evidence. (AR 19-24). Contrary to Mr. Aguirre's assertion, the ALJ considered how Mr. Aguirre's mental limitations affect both his ability to work and the occupational base. To the extent Mr. Aguirre contends the ALJ should have ordered additional evidence, the Court finds that the criteria for doing so are not met in this case. *See Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997) (explaining that an ALJ should order additional examination of a claimant when there is a direct conflict in the medical evidence requiring resolution, where the medical evidence in the record is inconclusive, or where additional tests are required to explain a diagnosis already contained in the record). Therefore, the Court finds no support for these remaining claims and recommends they be denied.

## V. Recommendation

For the reasons stated above, the Court finds that the ALJ's decision was supported by substantial evidence and the ALJ applied the proper legal standards. **IT IS THEREFORE RECOMMENDED** that Mr. Aguirre's *Motion to Reverse or Remand Administrative Agency Decision With Supporting Memorandum*, (Doc. 20), be **DENIED**.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE